## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| In re<br><br>SUNCREST STONE PRODUCTS, LLC, and<br>341 STONE PRODUCTS, LLC,<br><br>Debtors<br><hr><br>MARK C. HEALY, as Trustee of the SSP<br>Creditors Trust,<br><br>       Plaintiff,<br>v.<br><br>MICHAEL COVINO,<br>COVINO FAMILY OFFICES, LLC, and<br>FROGTOWN NURSERIES, LLC<br><br>       Defendant. | Chapter 11<br><br>Case No. 18-10850-AEC<br><br>Jointly Administered<br><br><br>Adv. Proc. No. 20- |

## COMPLAINT

Plaintiff MARK C. HEALY, as Trustee of the SSP Creditors Trust, sues MICHAEL

COVINO ("Defendant Covino"), COVINO FAMILY OFFICES, LLC ("Defendant CFO") and

FROGTOWN NURSERIES, LLC ("Defendant Frogtown") to recover damages for (a) breach of

fiduciary duty (b) breach of implied duty of good faith, (c) civil conspiracy, (d) unjust enrichment,

and (e) to avoid and recover payments and transfers made to, or for the benefit of, Defendants by

or on behalf of Debtors Suncrest Stone Products, LLC, ("Suncrest") and /or 341 Stone Properties,

LLC ("341 Stone") (collectively, the "Debtors") prior to the Debtors' bankruptcy filings.

## BACKGROUND

1.      On July 13, 2018 (the "Petition Date"), the Debtors filed Voluntary Petitions for

reorganization under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code")

in the United States Bankruptcy Court for the Middle District of Georgia (the "Court"). The Debtors' respective cases are jointly administered by order of the Court.

2.      After the Petition Date, the Debtors continued to operate their business and manage their property as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No creditor's committee was appointed in the case.  No trustee has been appointed in either case. The Court appointed an examiner in 2019 and the examiner has completed his role.

3.      On June 17, 2020 the Court entered its *Order Confirming Third Amended Joint Plan of Reorganization of the Debtors and Setting Certain Plan-Related Deadlines* (Dkt. 717) (the "Confirmation Order").  The Debtors' *Third Amended Joint Plan of Reorganization* (Dkt. 559) provided for the creation of the SSP Creditors Trust, with Mark C. Healy designated as Trustee.

4.      As a result of the Confirmation Order itself and the Debtors' corresponding transfers of causes of action and property to the SSP Creditors Trust as required by the Confirmation Order, Mark C. Healy has the authority to bring this action on behalf of the SSP Creditors Trust and the Debtors' estates.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334(a) and has both subject-matter jurisdiction and personal jurisdiction over all the parties.

6.      Defendant Covino is believed to be a resident of Connecticut with an address in  New Canaan, Connecticut. Defendant CFO is a limited liability company organized under New York law with a principal place of business in Purchase, New York. Defendant Frogtown is or was a limited liability company organized under either New York or Connecticut law that had a principal place of business in New Canaan, Connecticut. As a result of their minimum contacts with the forum, all Defendants are subject to the personal jurisdiction of the Court.

7.     This matter is a core proceeding within the meaning 28 U.S.C. § 157(b)(2).

8.     Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1409.

9.     The statutory bases for the relief requested in this Complaint are 11 U.S.C. §§ 502(d), 544, 548(a), and 550 and Rules 3007 and 7001(1) of the Federal Rules of Bankruptcy Procedure.

### FACTUAL ALLEGATIONS

10.     Debtor Suncrest was and is in the business of producing and selling non-structural decorative stone for use in the construction industry. Debtor 341 Stone owned and owns the real estate and facility from which Suncrest has operated. The Debtors are located in Ashburn, Georgia.

11.     The predecessor to the business of the Debtors was Suncrest Stone, Inc. ("Suncrest Inc.") which was based in Ashburn, Georgia.  In August 2016, the Debtors, led by Mr. Jeff Stevens ("Mr. Stevens"), purchased through leveraged buyout substantially all of the assets of Suncrest Inc.'s business, including $600,000 of operating capital (the "Purchase"), utilizing financing in the form of a SBA loan through Newtek Small Business Finance, LLC ("Newtek") in the approximate amount of $5 million.  Additionally, Suncrest Inc. provided seller financing to the Debtors in the purported amount of $1.3 million, purportedly secured by a junior position on all of Debtors' assets.   At the request of Newtek, the Debtors organized Suncrest Stone Products, LLC ("Suncrest") as the operating entity and 341 Stone Products, LLC ('341 Stone') as the holding company for the real estate.

12.     In order to acquire the business, Mr. Stevens sought the help of two individuals who would turn out to be instrumental in causing the Debtors to have to file these bankruptcy cases; Defendant Covino and Mr. Phillip Ruthen. Messrs. Covino and Ruthen were involved in almost all aspects of the Purchase and the financing for it, both of them usurped and exercised

3

tremendous power to determine the terms of the Purchase, including the sale price, and its financing. Defendant Covino, acting for and through Defendant CFO, played a crucial role with regard to the dealings with Newtek and made certain that the Purchase was structured so that Mr. Stevens' new entity was purchasing cash from Suncrest Stone, Inc. using financing from Newtek. On information and belief, Mr. Stevens put no money into the Purchase, instead buying all of the assets from Suncrest, Inc., including $600,000.00 in cash, with "other people's money." Defendant Covino, who had a long-standing relationship with Newtek, worked closely with Newtek on the financing approval from Newtek. Defendant Covino, with the acquiescence and assistance of Newtek personnel, made it clear to Mr. Stevens that Newtek would never approve the financing unless Defendant Covino handled all communications with Newtek and controlled the process. In that regard, Defendant Covino, and consequently Defendant CFO, occupied a position of extreme trust with regard to Mr. Stevens and the Debtors. Newtek improperly supported Defendant Covino's grab for control over the transaction.

13.    During July and August 2016 as the Newtek loan review process progressed, Defendant Covino and Mr. Ruthen each hand-picked an attorney in New York with whom they had personal relationships to assist the Debtors with the transaction and closing. Those two attorneys were Harry E. Werner and Claude P. Priolet and at relevant times each represented Suncrest and 341 Stone. In early August 2016, eventually Newtek agreed to provide approximately $5,000,000.00 in SBA loan financing to Suncrest and 341 Stone. In addition, seller Suncrest Stone, Inc. agreed to provide $1,050,000 in seller financing. Under SBA regulations, long-term debt to Suncrest Stone, Inc. could be considered as "owners equity" for determining the loan-to-value ratios on the Newtek financing, so long as the seller agreed to not seek or accept any payments from the purchaser for some specified period of time. In this case, Suncrest Stone, Inc. agreed and contracted that it would not accept any payments related to the seller financing until September 1,

4

2018. Shortly before the closing of the Purchase, Defendant Covino, Mr. Werner, Mr. Priolet, Newtek and Suncrest Stone Inc. changed the terms of the Purchase, including the purchase price. Those parties determined that Suncrest Stone, Inc. would need to and should increase its seller financing from $1.050 million to $1.3 million, a difference of $250,000.00. Suncrest Stone, Inc. agreed to do so, with the explicit demand and requirement that immediately after the closing, Suncrest Stone, Inc. would be paid $250,000.00 in cash to reduce the seller financing back to $1.050 million (the "Payment Demand"). Of course, Suncrest Stone, Inc. was never intended to and did not actually disburse any funds to Debtors in connection with the closing. Mr. Covino, Mr. Werner, Mr. Priolet, and Newtek all agreed to this $250,000.00 Payment Demand, even though it was illegal and fraudulent as to Debtors and the SBA and in complete violation of Suncrest Stone, Inc.'s written contract to forego payments – a contract for which the Debtors were parties and third-party beneficiaries.

14.     The closings of the Newtek financing transaction and the Purchase from Seller Suncrest Inc. occurred on or about August 29, 2016. During the course of this Case and through extensive discovery, Debtors discovered that after the closings they were to have the following Operating Capital:

| | |
|---|---|
| Cash from Purchase | $ 600,000.00 |
| Working Capital from Newtek Loan(s) | $ 277,205.03 |
| Total Operating Capital: | $ 877,205.03 |

15.     The anticipated Operating Capital was quickly siphoned off by Defendant Covino and Mr. Ruthen, with the knowing assistance of Mr. Werner, Mr. Priolet, Suncrest Inc. and others. Debtors have discovered the following disbursements were made post-closing from funds identified as operating capital:

| | |
|---|---|
| Frogtown Nurseries, LLC | $ 25,000.00 |
| Covino Family Offices, LLC | $ 125,000.00 |

| | |
|---|---|
| Mark Mauriello, P.C. | $ 100,000.00 |
| Misc. Closing Costs | $  37,457.56 |
| Harry Werner | $ 312,542.44 |
| Suncrest Stone Signature Bank | $ 250,000.00 |
| Total: | $ 850,000.00 |

16.     As a result of those improper transfers the Debtors were deprived permanently of the $600,000 they had just purchased. On information and belief Defendant Covino received $301,742.50 in fees, in blatant non-compliance with SBA regulations requiring the disclosure of compensation paid to any agent or consultant in connection with SBA financing. Every dollar of the $600,000.00 was directed to parties other than the Debtors, and the Debtors were deprived permanently of the $600,000 they had just purchased.

17.     Mr. Werner then transferred $ 45,619.90 at Mr. Ruthen's request to two bank accounts in Suncrest's name at Signature Bank in New York, even though the Debtors' operations were in Ashburn, Georgia and their primary banking relationship was with a bank located there. The Debtors had no operations or office in New York, and the sole reason the funds were transferred to Signature Bank in New York was for the personal convenience of Mr. Ruthen and to facilitate his looting of company money for personal use.  Mr. Ruthen controlled these accounts to the exclusion of Mr. Stevens and the Debtors. Mr. Ruthen then proceeded to spend the money for his personal use on such items as child support payments, rent, plastic surgery, donations to his *alma mater*, and camp for his child(ren). On information and belief, Defendant Covino knew that Mr. Ruthen fraudulently intended to transfer an additional $250,000.00 to the Signature Bank accounts for his own personal use, but failed in his duties to the Debtors by not even advising Mr. Stevens of his knowledge of Mr. Ruthen's intentions. Mr. Werner then transferred $250,000.00 to Suncrest Inc.  in satisfaction of the Payment Demand and $1,750.00 to Thomas Barnes as fraudulent and illegal payments..

6

18.     Defendant CFO also received an additional payment, not disclosed to the Debtors, of $51,742.50 from Newtek. At all relevant times, Defendant Covino was acting through Defendant CFO and Defendant CFO took no actions without the direction of Defendant Covino. At all times related to the transfer of $25,000 of Operating Capital to Defendant Frogtown, Defendant Covino so dominated Defendant Frogtown that they were alter egos and for purposes of this lawsuit should be treated as one entity such that a payment to Defedant Frogtown should be treated as a payment to Defendant Covino. That dominance is shown by the fact that Defendant Covino used Defendant Frogtown as a vehicle to route a $25,000 transfer for his benefit. Defendant Frogtown had no business relationship at all with the Debtors.

19.     The siphoning of precious Operating Capital left the Debtors with only $27,205.03 for conducting business operations, and the lack of that Operating Capital was a significant factor in the losses that -required the Debtors to file for bankruptcy protection.

20.     In essence, at the time of the closings Debtors were completely reliant on, and dependent on the goodwill and judgment of, Defendants Covino and Defendant CFO on all matters related to the Purchase and the Newtek financing. Defendant Covino orchestrated and participated in a scheme and conspiracy to siphon off the Operating Capital through a series of improper transfers. Defendant Covino formed one or more agreements with Mr. Ruthen, Suncrest Inc., Mr. Werner, and perhaps with Newtek and Mr. Priolet in furtherance of that scheme. In addition, Defendant Covino breached his fiduciary duties to the Debtors by participating in the scheme and conspiracy to fraudulently transfer the Operating Capital away from the Debtors.

21.     Defendant Covino's and Defendant CFO's actions damaged the Debtors proximately by, *inter alia*, depriving Debtors of a substantial proportion of the assets they purchased. As a result of the capital crunch that was inevitable after the Debtors were stripped of their Operating Capital, the Debtors were forced to seek additional financing to make up for the

7

shortfall. On information and belief, on or about December 16, 2016 Defendant Covino (or

Defendant CFO) received an additional transfer of approximately $16,000 (the "December 2016

Payment") in connection with the closing that same day of a lending facility between CDS

Business Services, Inc. an affiliate of Newtek.

22.    In its bankruptcy schedules filed in its case, Debtor Suncrest stated that it had

liabilities of $6,942,784.34 and assets of $712,306.31. As of the Petition Date and all relevant

times before the Petition Date, Suncrest was insolvent.

23.    In its bankruptcy schedules filed in its case, Debtor 341 Stone stated that it had

liabilities of $5,785,512.61 and assets of $1,177,221.00. As of the Petition Date and all relevant

times before the Petition Date, 341 Stone was insolvent.

**THE TRANSFERS TO DEFENDANTS**

24.    Between August 20, 2016 and July12, 2018 the Debtors or their agents made one or

more transfers of an interest in the Debtors' property to Defendants. More specifically, the Debtor

made the following transfer to or for the benefit of Defendants:

On or about August 29, 2016     $125,000 to Defendant CFO;

On or about August 29, 2016     $ 25,000 to Defendant Frogtown;

On or about December 16, 2016  approximately $16,000 to Defendant CFO or Defendant
Covino;

On information and belief, the August 29, 2016 $100,000 transfer to Mark Mauriello, P.C.

was for the benefit of Defendant Covino.

25.    The four transfers so identified, together with all other transfers between August 15,

2016 and July 12, 2018 from the Debtor to or for the benefit of Defendants, are referred to as the

"Transfers." It is Plaintiff's intent in this Complaint to seek the avoidance and recovery of each

Transfer, whether or not such transfer is specifically identified herein or whether Plaintiff has

discovered or identified such transfer or transfers.

8

## Count 1
**Breach of Fiduciary Duty- Defendants Covino and CFO**

26.     Plaintiff repeats and realleges the allegations contained  in  paragraphs 1 through 25 as though fully set forth herein.

27.     As of August 2016 and at the time of the closings and each of the Transfers, the Debtors and Defendants Covino and through him Defendant CFO shared a relationship whereby (a) Debtors reposed trust and confidence in Defendants Covino and CFO, and (b) Defendants Covino and CFO undertook such trust and confidence and assumed a duty of the highest loyalty to advise, counsel, and/or protect the Debtors. In essence, Debtors were completely reliant on, and dependent on the goodwill and judgment of, Defendants Covino and Defendant CFO on all matters related to the Purchase and the Newtek financing.

28.     Defendants Covino and Defendant CFO breached materially their duties to the Debtors. Defendants did so, *inter ali*a, by participating in a scheme to deprive Debtors of the Operating Capital and by failing to try to protect Debtors from that scheme.

29.     Defendants' breaches of duty were proximate causes of loss to the Debtors, in an amount of at least $813,543.44.

30.     Accordingly, Debtors are entitled to recover all such damages from Defendants, including exemplary and punitive damages, and are entitled to a judgment in such amount as they may prove against Defendants Covino and CFO, jointly and severally.

## Count 2
**Breach of Implied Duty of Good Faith- Defendants Covino and CFO**

31.     Plaintiff repeats and realleges the allegations contained in  paragraphs 1 through 25 as though fully set forth herein.

32.     As part of their agreements with the Debtors, Defendants Covino and  Defendant CFO covenanted and agreed that Defendant would act in good faith and in the Debtors' best interests.

33.     Defendants breached that implied duty of good faith to Suncrest and 341 Stone. Defendants did so, *inter alia*, by participating in a scheme to deprive Debtors of the Operating Capital and overcharging Debtors for their services, and by accepting a secret fee from Newtek that was not disclosed to Debtors.

34.     Defendants' breaches of their duty were proximate causes of loss to the Debtors, in an amount of at least $813,543.44.

35.     Accordingly, Debtors are entitled to recover all such damages from Defendant and are entitled to a judgment in such amount as they may prove against Defendant.

## Count 3
### Civil Conspiracy- Aiding and Abetting Fraudulent Transfers- Defendants Covino and CFO

36.     Plaintiff repeats and realleges the allegations contained in  paragraphs 1 through 25 as though fully set forth herein.

37.     Defendants Covino and CFO participated in a scheme and conspiracy to siphon off the Operating Capital through a series of fraudulent transfers, which included but are not limited to the Transfers as defined above, plus all the transfer identified above as having come from the Operating Capital. Defendants formed one or more agreements with Mr. Ruthen, Suncrest Inc., Mr. Werner, Newtek and Mr. Priolet in furtherance of that scheme.

38.     In fact, the Operating Capital was diverted away from the Debtors through fraudulent transfers totaling at least $813,543.44.

39.     Defendants' actions were a proximate cause of at least $813,543.44 in damages to Debtors.

10

### Count 4
### Unjust Enrichment- Defendants Covino and CFO

40.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

41.     Based on their relationship of confidentiality and trust, Defendants Covino and CFO were able to have Debtors confer a monetary benefit on them of at least **$266,000.**.

42.     Under the circumstances of Defendants' misconduct, it would be unjust and inequitable for Defendant to retain such monetary benefit.

43.     Debtors are entitled to recover the monetary benefits conferred on Defendants.

### Count 5
### Avoidance of Transfers- (11 U.S.C. § 548)

44.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

45.     All of the Transfers, including but not limited to the $340,895.50 identified above, were transfers of property, or an interest in property, of the Debtors or that would have been property of the Debtors has the Transfers not been made.

46.     The Transfers were made or perfected by the Debtors to or for the benefit of the Defendant.

47.     The Debtors received less than a reasonably equivalent value in exchange for the Transfers, in part because the value of the services Defendant Covino and Defendant CFO provided were are less than the Transfers they received from the Debtors. Defendant Frogtown provided no services or benefit to the Debtors

48.     The Transfers were made at (a) at a time when the Debtors were insolvent, (b) at a time when the Debtors were engaged in, or was about to engage in, a business and transactions for which the remaining assets of the Debtors were unreasonably small in relation to the business and

11

transactions, (c) at a time when the Debtors intended to incur, or believed or should reasonably have believed that they would incur, debts beyond their ability to pay as they became due, or (d) with the result that the Debtors became insolvent as a result of such transfers.

49.     Accordingly, each of the Transfers should be avoided and set aside as fraudulent under 11 U.S.C. § 548.

## Count 6
### Avoidance of Transfers (11 U.S.C. § 544(b) and 2010 Georgia Code- Section 18-2-70 et seq.)

50.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

51.     The Debtors received less than a reasonably equivalent value in exchange for the Transfers, in part because the value of the services Defendant Covino and Defendant CFO provided were are less than the Transfers they received from the Debtors. Defendant Frogtown provided no services or benefit to the Debtors

52.     The Transfers were made at (a) at a time when the Debtors were insolvent, (b)at a time when the Debtors were engaged in, or was about to engage in, a business and transactions for which the remaining assets of the Debtors were unreasonably small in relation to the business and transactions, (c) at a time when the Debtors intended to incur, or believed or should reasonably have believed that they would incur, debts beyond their ability to pay as they became due, or (d) with the result that the Debtors became insolvent as a result of such transfers.

53.     Accordingly, each of the Transfers should be avoided and set aside as fraudulent under 11 U.S.C. § 544 (b) and state law including Georgia Code Section § 18-2-70 et seq.

## Count 7
### Recovery of Property- (11 U.S.C. § 550)- Defendant Covino

54.     Plaintiff repeats and realleges the allegations contained in  paragraphs 1 through 25 as though fully set forth herein.

55.     The Plaintiff is entitled to avoid the Transfers.

56.     Defendant Covino was the initial transferee of the Transfers, the intermediate or mediate transferee of the initial transferee of the Transfers, or the person for whose benefit the Transfers was made.

57.     Pursuant to 11 U.S.C. § 550(a), Plaintiff  is entitled to recover from Defendant an amount to be determined at trial that is not less than the total of all of the Transfers, plus interest to the date of payment of such judgment, and costs of this action.

## Count 8
### Recovery of Property- (11 U.S.C. § 550)- Defendant CFO

58.     Plaintiff repeats and  realleges  the  allegations  contained  in   paragraphs 1 through 24 as though fully set forth herein.

59.     The Plaintiff is entitled to avoid the Transfers.

60.     Defendant CFO was the initial transferee of the Transfers, the intermediate or mediate transferee of the initial transferee of the Transfers, or the person for whose benefit the Transfers was made.

61.     Pursuant to 11 U.S.C. § 550(a), Plaintiff  is entitled to recover from Defendant CFO an amount to be determined at trial that is not less than the total of all of the Transfers, plus interest to the date of payment of such judgment, and costs of this action.

## Count 9
### Recovery of Property- (11 U.S.C. § 550)- Defendant Frogtown

62.     Plaintiff repeats and  realleges  the  allegations  contained  in   paragraphs 1 through 25 as though fully set forth herein.

63.     The Plaintiff is entitled to avoid the Transfers.

13

64. Defendant Frogtown was the initial transferee of the Transfers, the intermediate or mediate transferee of the initial transferee of the Transfers, or the person for whose benefit the Transfers was made.

65. Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant CFO an amount to be determined at trial that is not less than the total of all of the Transfers, plus interest to the date of payment of such judgment, and costs of this action.

## Count 9
## Alter Ego- Defendant Covino and Defendant Frogtown

66. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 25 as though fully set forth herein.

67. Defendant Covino dominated Defendant Frogtown to such an extent that Defendant Frogtown could take no independent action and had no existence apart from Defendant Covino and that a Transfer to Frogtown should be considered as a Transfer to Defendant Covino..

68. Accordingly, it is fair and equitable to "pierce the corporate veil of Defendant Frogtown's limited liability structure and to hold Defendant personally responsible for Defendant Frogtown's liability herein and to consider any Transfer to Defendant Frogtown to be a transfer to and for the benefit of Defendant Covino.

## RESERVATION OF RIGHTS

69. Plaintiff reserves the right to bring all other causes of action and claims that it might have against Defendant, on any and all grounds, as allowed under the law or in equity. Nothing in this Complaint shall be construed as a waiver of the Plaintiff's rights to object to any proof of claim filed by the Defendant.

**WHEREFORE**, Plaintiff requests entry of a judgment in its favor against all Defendants as follows:

14

(a)    For avoidance and recovery of the Transfers, or the value thereof;

(b)    For a money judgment against Defendants Covino,  CFO, and Frogtown

in the amount of the Transfers, plus interest and costs;

(c)    For a money judgment against Defendants Covino and CFO, plus

punitive and exemplary damages;

(d)    For a judgment that Defendant Frogtown is and was at relevant times the

alter ego of Defendant Covino;

(e)    For Plaintiff's costs and attorney fees; and

( e )   For such other and further relief as is just and proper.


July 12, 2020                                    WILCOX LAW FIRM

                                                /s/ **Robert Wilcox**
                                                Robert D. Wilcox
                                                Admitted Pro Hac Vice
                                                Florida Bar No.: 755168
                                                1301 Riverplace Blvd., Suite 800
                                                Jacksonville, Florida 32207
                                                Telephone: (904) 405-1250
                                                rw@wlflaw.com
                                                admin@wlflaw.com

                                                and

                                                **STONE & BAXTER, LLP**

                                                Matthew S. Cathey
                                                Georgia Bar No. 759547
                                                mcathey@stoneandbaxter.com
                                                577 Mulberry Street - Suite 800
                                                Macon, Georgia  31201
                                                (478) 750-9898; (478) 750-9899 *facsimile*

                                                Counsel for Mark C. Healy, Liquidating Trustee


15